(36 South. 803.)

No. 15,124.

LOUISIANA & N. W. RY. CO. v. VICKS-BURG, S. & P. RY. CO.*

(May 23, 1904.)

EMINENT DOMAIN—PROPERTY SUBJECT—RE-
VIEW ON APPEAL.

1. Land in public use by one railroad company cannot, without legislative authority, be taken by another railroad corporation. 21 South. 144, 49 La. Ann. 35.
In the case at bar, the locus in quo belongs to defendant, and has been used by both corporations since 1880 as a common station. See McCormick Case, 33 South. 762, 109 La. 764.
The appellate jurisdiction of this court embraces all questions of law and of fact, and all the findings of an expropriation jury are reviewable by this court on appeal.

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Bienville; Ben P. Edwards, Judge.

Action by the Louisiana & Northwest Railway Company against the Vicksburg, Shreveport & Pacific Railway Company. Judgment

———

*Rehearing denied June 22, 1904.

for plaintiff, and defendant appeals. Reversed.

Stubbs & Russell, for appellant. John A. Richardson, for appellee.

LAND, J. This suit was instituted for the purpose of expropriating a parcel of land, of irregular shape, containing $34/100$ of an acre, in the town of Gibbsland, and lying within the angle made by the intersection of the tracks of the litigating companies at said place.

The petition represented that this plat of ground was necessary for depot and platform purposes, to enable plaintiff company to perform its duties as a common carrier to the public in receiving and taking care of its freight and passenger business.

The petition represented that defendant company had no improvements on this land, and had never used the same; that the depot and platform thereon were constructed by plaintiff and its authors, and had been by them used for a number of years; that under the decision of this court in the case of J. H. McCormick, Receiver, v. La. & N. W. R. R. Co., 109 La. 764, 33 South. 762, that plaintiff had no right to remain thereon, and ordering the removal of its improvements, it became necessary for plaintiff to expropriate said property according to law; and that plaintiff had tendered to defendant $250 as the value of the said parcel of ground, which said tender the said defendant refused to accept.

A jury was ordered as prayed, and due notice given to the defendant company.

It may be here stated that plaintiff company was the successor of the Louisiana & Northwest Railroad Company, which in its turn was the successor of the Louisiana North & South Railroad Company.

The defendant answered, pleading the general issue, admitting ownership in itself, and alleging that said property was absolutely necessary for its own use, and for the discharge of its obligations to the public as a

common carrier, and that the expropriation of the same would work irreparable damage to the respondent.

The answer further averred that, many years prior to the suit, plaintiff's author obtained possession of the property in dispute under a verbal license, with the distinct understanding that the usual written license should be subsequently executed, but that it refused to sign said license, and in bad faith retained possession; that for fully 10 years defendant, by negotiations and suit, endeavored to have plaintiff's tenure and the relations between the parties as common carriers adjusted, so that the proper depots and transfer facilities might be erected, there being no other place in the town suited for passenger business; that the structures erected by plaintiff were crude, inadequate, and unsuited to the growing traffic at this point; that plaintiff opposed all of defendant's plans to better the situation, and denied its legal rights of possession and control, until judgment was rendered in respondent's favor in the case of McCormick, Receiver, v. La. & N. W. Ry. Co., 109 La. 764, 33 South. 762; that thereupon respondent notified plaintiff company of its intention to construct a suitable passenger depot on the ground in controversy for the use of both railroads on the usual terms; that the answer to this amicable proposition was the institution of this expropriation suit; that this plot of ground has been in the actual daily use of respondent for station purposes for more than 10 years; and that the deprivation of such use would damage respondent in a sum not less than $5,000, in addition to the value of the property, worth $1,000.

Defendant prayed that plaintiff's demand be rejected, and, in the alternative, for judgment for $6,000 in the event the property was expropriated.

The verdict of the jury was in favor of the plaintiff, and fixed the price of the land at $200 and the damages at $50.

From a judgment pursuant to the verdict, defendant appealed.

The pleadings of both parties refer to the McCormick Case, 109 La. 764, 33 South. 762, in which it was decreed that defendant company was the owner of the ground sued for, and that plaintiff should remove its passenger station therefrom within seven months from the date of the decree.

It appeared from the record in said suit that the depot building was constructed under a verbal license for the joint use of both railroad companies.

In the same case we said: "The license was granted for a particular purpose, but it happens that the building is not equal to the increasing business. It is not used as plaintiff contemplated it would be used. It is not in good repair. It is in the way, as it obscures needed range of view at this spot. The licensor, we think, can insist upon its removal. The agreement was in some respect commutative. As the building does not come up to the condition expected under the terms of the license, the defendant will have to remove it."

In our decree we reserved "defendant's rights to expropriate needful land for its depot, and all legal remedies it may have in that connection."

It is hardly necessary to observe that this general reservation of legal rights and remedies cannot be reasonably construed into an expression of opinion that plaintiff herein had the right to expropriate the particular piece of ground in controversy.

In the consideration of this case we start out with the undisputed facts of ownership in defendant, and its use for many years of this piece of ground, conjointly with plaintiff and its authors, for the purpose of a passenger and express station.

Washburn, civil engineer, witness for plaintiff, testified that the station in question had been used by both railroads as a union passenger station ever since it was

constructed, and it was the only suitable place for that purpose in the town of Gibbsland. This witness said: "The whole thing, summed up, is this: There should be but one depot for both roads, and the most suitable grounds should be occupied by each road. It would be very inconvenient to the public to have separate passenger depots there."

It further appears from the testimony of Washburn that said station is used by six daily passenger trains of defendant and two daily passenger trains of plaintiff. This common use of the station is shown by the testimony of all of the witnesses, and is not disputed.

The president of the defendant company testified that there was no other site in Gibbsland suitable for a common passenger depot, and its expropriation would put his company to a heavy expense in constructing and operating a passenger station elsewhere, besides increasing the cost of the transfer of passengers, baggage, mail and express.

The evidence leaves no room for doubt that there are other sites in the town that could be used by the companies for passenger stations, and it is conceded that the locus in quo is the only suitable place for a common or union depot.

For this particular purpose, the site at the junction of the two tracks is as necessary to defendant as it is to the plaintiff.

The use heretofore has been conjoint, under an agreement which has been terminated.

The real dispute between the parties is as to which company shall have the privilege of erecting and controlling the station buildings on this particular site, with the consequent right of dictating terms to the other company for a license to use the station.

This question does not concern the public, and between the companies it is a matter of dollars and cents.

The right to use and control the property primarily belongs to the defendant, the owner of the soil, and it cannot be deprived of such right except by the exercise of the power of eminent domain.

"Land in public use by one corporation cannot, without legislative authority, in express terms or arising from necessary implication, be taken by another corporation." Railway Co. v. Railway Co., 49 La. Ann. 35, 21 South. 144.

In the case at bar it cannot be properly said that the ground in dispute, with the buildings thereon, is not used by the defendant company.

In the McCormick Case, 109 La. 764, 33 South. 762, we found that the depot building was constructed in accordance with agreement for the joint use of both railroads. That it had been so used since 1880 is not disputed.

The facts of this case do not warrant the condemnation demanded by the plaintiff company under the existing statutes of this state.

Counsel for plaintiff company, in his argument at the bar and in his brief, urged the novel contention that the findings of the jury that plaintiff needed the land in controversy to operate its business and discharge its obligations to the public, and that defendant was not actually using the land, and that the use of the same was not necessary to defendant for similar purposes, are not reviewable on appeal, and that our jurisdiction is limited to questions of value and damages.

The jurisdiction of this court is derived from the Constitution of 1898, and cannot be limited by prior or subsequent legislative enactments. In civil cases we have jurisdiction in "all cases," where the matter in dispute exceeds $2,000, both "on the law and the facts." Article 85.

Hence it is unnecessary to consider the contention that this court, under the provisions of the Revised Statutes of 1870, is

without jurisdiction to review the verdict of the jury on certain questions of fact involved in the decision of this case.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed, and it is now ordered and decreed that plaintiff's demand be rejected and this suit be dismissed, at plaintiff's cost in both courts.